### No. C-1470

**Thelma Gelfand v. The People of the State of Colorado**

(586 P.2d 1331)

Decided November 27, 1978.

G. Philip Bryson, for petitioner.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Robert C. Lehnert, Assistant, for respondent.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The defendant Gelfand was convicted by a jury of theft in violation of section 18-4-401, C.R.S. 1973. The court of appeals affirmed the conviction and we granted certiorari. Here the defendant seeks reversal on the grounds: (1) that she was denied a speedy trial, and (2) that the trial court erred in admitting, as part of the prosecution's case-in-chief, incriminating statements she had made to a probation officer in the course of plea negotiations. We reject the defendant's speedy trial contentions. However, we hold that the trial court improperly admitted her incriminating statements made during plea negotiations, and therefore she is entitled to a new trial.

I.

We first address the assertion that the defendant was denied her constitutional right to a speedy trial. Discounting excludable delays attributable to the defendant, she was tried within the prescribed six months after entering her not guilty plea. Section 18-1-405, C.R.S. 1973; Crim. P. 48(b). Nevertheless she is not precluded from asserting her *constitutional* right to a speedy trial simply because the trial was held within the required six months period. *U.S. Const.* Amend. VI; *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) (applying federal constitutional speedy trial requirement to states); *Colo. Const.* Art. II, Sec. 16. The defendant, however, has the burden of proving that her constitutional speedy trial right has been denied. *Ziatz v. People,* 171 Colo. 58, 465 P.2d 406 (1970); *Casias v. People,* 160 Colo. 152, 415 P.2d 344 (1966).

The circumstances of each case must be examined to determine whether a speedy trial has been afforded. *Medina v. People,* 154 Colo. 4, 387 P.2d 733 (1963). In making this determination the court must consider the length of the pretrial delay, the reasons for it, whether the defendant has demanded a speedy trial, and whether any prejudice actually resulted to the defendant. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Potter v. District Court,* 186 Colo. 1, 525 P.2d 429 (1974); *People v. Spencer,* 182 Colo. 189, 512 P.2d 260 (1973). None of those four factors is indispensable to a finding that speedy trial has been denied. Nor is any one of them *ipso facto* sufficient to require

such a finding. Rather all are interrelated and must be considered together with any other relevant circumstances. Constitutional speedy trial cases must be decided on an *ad hoc* basis applying a balancing test which considers the conduct of both the prosecution and the defendant. *Barker v. Wingo, supra.*

█ Although the defendant made timely objections to prosecution continuances and moved for dismissal prior to commencement of trial, the record reflects that she either requested or agreed to many of the delays. The continuances requested by the prosecution were justified, for the prosecution's chief witness was hospitalized and too ill to bear the stress of testifying.[1]

█ The defendant argues that she was unfairly prejudiced because, after the trial date originally set, the court allowed the prosecution to endorse additional witnesses and to obtain an exemplar of her handwriting. While it is no doubt true that this additional evidence "prejudiced" the defendant's case, it did so only in the sense that all prosecution evidence indicating guilt is unfavorable to a defendant.[2] She has failed to show, however, that the delay was unfairly sought or was employed to deny her a fair trial. *See Ziatz v. People, supra.*

Our review of the record and the circumstances of the case in light of the balancing test prescribed by *Barker v. Wingo, supra,* leads us to conclude that the defendant was not denied her constitutional right to a speedy trial.

## II.

Upon the advice of counsel, the defendant entered into plea negotiations and applied for disposition of her case by deferred sentencing pursuant to section 16-7-403, C.R.S. 1973 (1977 Supp.). A policy of the Weld County district attorney required that every defendant who sought deferred sentencing be interviewed and evaluated by the probation department. During Gelfand's interview, she made statements to the probation officer which implicated her in the crime.

Before a plea agreement was formally concluded, the defendant withdrew from the negotiations and entered a not guilty plea. At trial the probation officer was called as a witness in the prosecution's case-in-chief, and testified over objection to the substance of the defendant's incriminating statements.

---

[1] *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Cf.* Crim. P. 48(b)(6)(VII)(A) which provides that a period of delay granted at the prosecutor's request, without the defendant's consent, is not charged against the prosecution if caused by the unavailability of material evidence which the prosecutor has diligently sought and which will be available later.

[2] "Prejudice" in this context must be defined in the light of the interests the speedy trial right was designed to assure defendants. These include preventing oppressive pretrial incarceration, avoiding subjecting the accused to unnecessary anxiety, and limiting the possibility that the defense will be impaired, as by loss of defense witnesses. *Barker v. Wingo, supra* note 1.

The defendant here maintains that it was error to allow the prosecution to use her statements against her as substantive proof of guilt. We agree with her contention.

 In view of the general public policy to encourage the efficient and economical administration of criminal justice, plea negotiations for the purpose of reaching plea agreements have become accepted as a legitimate means of promptly and fairly settling criminal cases. *People v. White,* 182 Colo. 417, 514 P.2d 69 (1973); Sections 16-7-301 through 303, C.R.S. 1973 (1977 Supp.);[3] *A.B.A. Standards Relating to Pleas of Guilty* §3.1. *See also Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Plea compromises eliminate the need for expensive and time-consuming public trials in many cases. The defendant by a guilty plea aids in ensuring the prompt and certain application of correctional measures and, by removing his or her case from the court's backlog, helps to avoid delay in disposing of other cases. *A.B.A. Standards Relating to Pleas of Guilty* §1.8.

 If the effectiveness and integrity of the plea bargaining process are to be preserved, admissions or confessions made in connection with plea offers and negotiations must not be admitted as independent substantive evidence of guilt.[4] The defendant should not be penalized for cooperating with the prosecution by engaging in an approved plea negotiation process which is consistent with the objectives of the criminal justice system.

---

[3] The General Assembly clearly adopted a policy approving plea discussions and plea agreements by enacting section 16-7-303, C.R.S. 1973, which states:
"*Fact of discussion and agreement not admissible.* Except as to proceedings resulting from a plea of guilty or nolo contendere (no contest) which is not withdrawn, the fact that the defendant or his defense counsel and the district attorney engaged in plea discussions or made a plea agreement shall not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceeding."
Although this statute is not controlling here, our holding is consonant with the spirit of this strong legislative declaration of public policy. *See also* Crim. P. 11(f)(6).
[4] *Accord,* Fed. R. Evid. 410:
"Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, *or of statements made in connection with,* and relevant to, *any of the foregoing pleas or offers, is not admissible* in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel." (Emphasis added.)
Rule 410 of the Proposed Colorado Rules of Evidence submitted by the Colorado Bar Association, and now under consideration by this court, is substantially similar to the federal rule.
Furthermore, *A.B.A. Standards Relating to Pleas of Guilty* §3.4 clearly prohibits evidence of plea discussions or agreements being used either for or against a defendant in any criminal, civil, or administrative action unless a guilty plea or nolo contendere plea is entered and not withdrawn.

■ Here the defendant's statements were made for the narrowly limited purpose of assisting the district attorney and the court in determining whether she was an appropriate candidate for deferred sentencing. The probation department interview at which the statements were elicited was not requested by the defendant but was required by the prosecutor as a precondition to the defendant's being considered for deferred sentencing. When the statements were elicited, it was contemplated by both sides that they would have no probative effect on the issue of guilt or innocence, for both parties then assumed that a guilty plea would be entered. At that time neither party was bound by a plea agreement; either was free to withdraw from negotiations and insist on going to trial. When the defendant did withdraw from the plea negotiations, thus aborting the only purpose for which her inculpatory statements had been given, it was palpably unfair to allow the prosecution to use those statements against her for an entirely unintended purpose, to prove her guilt.

The fundamental unfairness of the situation can be better appreciated by considering the practical dilemma in which the defendant was placed. In order to receive a favorable probation department recommendation of eligibility for deferred sentencing, it was essential that the defendant acknowledge her guilt, demonstrate remorse, and evince willingness to assume responsibility for her misconduct. Had she refused to discuss her involvement in the incident giving rise to the charges, her lack of candor, contrition and cooperation probably would have led to a negative recommendation by the probation officer. Such an attitude would have marked her as a poor risk for deferred sentencing.

If the courts were to allow an admission or confession incident to plea negotiations to be used in the prosecution's case-in-chief to seek a conviction, and not solely to determine eligibility for deferred sentencing, competent defense lawyers would have to advise their clients not to reveal in the course of plea discussions their involvement in criminal conduct. The inevitable result would be to chill and inhibit cooperation by defendants, stifling candid discussions regarding the facts of the case. Without candor and cooperation few criminal cases could be settled. Employing defendants' statements as substantive evidence to prove guilt thus would undermine the general public policy of encouraging fair compromises of legal disputes.[5]

### III.

In light of this disposition it is unnecessary to reach the other allegations of error.

------

[5] The policy of the law favors settlement of civil controversies as well as criminal cases. Thus an offer or attempt to compromise a civil dispute is not admissible as evidence of the liability of the party who made the offer. *Consolidated Oil and Gas, Inc. v. Roberts,* 162 Colo. 149, 425 P.2d 282 (1967); *Thomas v. Carey,* 26 Colo. 485, 58 P. 1093 (1899).

The judgment of the court of appeals is reversed and the cause is returned to that court for remand to the trial court with directions to grant a new trial or for other disposition consonant with the view here expressed.

MR. JUSTICE KELLEY concurs in part and dissents in part.

MR. JUSTICE GROVES concurs in the result.

MR. JUSTICE KELLEY concurring in part and dissenting in part:

I concur in part I and dissent as to part II. The statements of the defendant made to the probation officer, in my opinion, were properly received in evidence. The statements were not made in the course of the criminal investigative stage, but at a stage of the proceedings when the defendant was preparing to plead guilty to a lesser offense than that with which she was charged and in the hope of receiving favorable consideration at the hands of the court. The statements were wholly voluntary, not elicited by trickery, deceit or under duress. The defendant was represented by counsel.

The defendant had a choice — either to exercise her right to remain silent or to tell her story to the probation officer. She elected the latter option in the expectation that it would result in more favorable treatment at the time of sentencing. I can see no reason why, when she changed her mind, her statement should not be used against her at trial.